**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CAROLE C. BOLDEN,         )
                                         )
     **Plaintiff,**               )
                                         )
     **v.**                     )     **2:05-cv-1063**
                                         )
**MAGEE WOMEN'S HOSPITAL**     )
**OF THE UNIVERSITY OF**         )
**PITTSBURGH MEDICAL CENTER,**  )
                                       )
     **Defendant.**            )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court for disposition is Defendant's MOTION FOR SUMMARY JUDGMENT (*Document No. 28*), with brief in support (*Document No. 29*), Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (*Document No. 33*), and Defendant's reply brief (*Document No. 37*).  After considering the filings of the parties, the evidence of record and the relevant statutory and case law, the Court will grant Defendant's Motion for Summary Judgment.

<u>Background</u>

Plaintiff Carole Bolden ("Bolden") was employed by Defendant Magee Women's Hospital of the University of Pittsburgh Medical Center ("Magee") from approximately March 20, 2000, through March 16, 2004, as a clinical support specialist in the radiology department. Doc. No. 30 at ¶ 2.  Pursuant to Bolden's job description, the "essential functions" of her job included the following: (1) providing general clerical support; (2) interacting directly with patients, family members, staff members and healthcare professionals; (3) answering work area telephones and triaging calls as appropriate; (4) obtaining information and scheduling examination appointments; (5) utilizing judgment in determining the appropriate level of services based on clinical needs; (6) clarifying pre-authorization requirements; (7) furnishing preparatory examination instructions and assistance to patients; (8) retrieving, or instructing patients to obtain, prior films or medical records pertinent for review at the time of testing; (9) clarifying unclear, incorrect or inappropriate test orders; (10) utilizing a computer system to enter, retrieve,

edit and print data; (11) compiling documentation needed to process patients upon arrival; (12) preparing departmental reports, film folders and miscellaneous forms; (13) maintaining and retrieving patient records in accordance with hospital/departmental policies governing patient confidentiality; (14) following mandatory reporting procedures for any incidents which could impact patient clinical care. *Id.* at ¶ 3. Bolden also assisted patients in changing clothes for their tests in the radiology department. *Id.* at ¶ 4.

On August 11, 2003, Bolden was injured in a bus accident. *Id.* at ¶ 5. She was not on the job at the time of her injury. The accident occurred when the bus stopped abruptly, causing Bolden to be thrown forward. *Id.* at ¶ 6. She struck her left arm on a bar near the front of the bus. *Id.* X-rays of Bolden's arm showed bruising and swelling, and she was instructed to take Tylenol and apply ice to the injured area. *Id.* at ¶ 7. The next day, Bolden noticed pain in her shoulder and stiffness in her neck. *Id.* at ¶ 8. She went to see Dr. Annette Ciotti at West Penn Internal Medicine, and another x-ray was done.[1] *Id.* at ¶ 9. This x-ray revealed a cervical strain. *Id.* Bolden received an excuse from Dr. Ciotti to miss work from August 12-14, 2003, and was instructed to return for a follow-up visit on August 15, 2003. *Id.* at ¶ 10. At that visit, Dr. Leland T. Henry prescribed physical therapy and gave Bolden an excuse to miss work for an additional week. *Id.* at ¶ 11. Bolden saw Dr. Henry again on August 22, 2003, obtaining an excuse to miss work for a longer period of time. *Id.* at ¶ 12.

In August 2003, Bolden started physical therapy, which was conducted three times per week until January 2004. *Id.* at ¶ 13. In November 2003, Bolden was referred to Dr. Thomas J. Larson, an orthopedist associated with West Penn Orthopedic Associates, who diagnosed her with a partially torn rotator cuff. *Id.* at ¶ 14. Bolden's treatment included medication, rest and therapy, but not surgery. *Id.* at ¶ 15.

---

[1]In a deposition dated June 27, 2006, Bolden testified that her primary care physician was Dr. Frank Kush, who is associated with West Penn Internal Medicine. Doc. No. 31-3 at 13-14. In its Concise Statement of Facts, Magee states that Bolden saw her primary care physician ("PCP") in the aftermath of the accident. Doc. No. 30 at ¶¶ 9-12. Bolden does not deny this assertion. Doc. No. 34-1 at ¶¶ 9-12. Nevertheless, it appears that Magee's reference to Bolden's "PCP" refers to the broader category of physicians associated with West Penn Internal Medicine, since Bolden testified that some of these visits were with physicians other than Dr. Kush (i.e., Dr. Annette Ciotti and Dr. Leland T. Henry). Doc. No. 31-3 at 13-17.

In the aftermath of the accident, Bolden was unable to perform household chores. *Id.* at ¶ 16. She is left-handed, and her ability to write was impaired by her injuries. *Id.* at ¶ 17. The injuries to her left shoulder prevented her from using her left arm for lifting. *Id.* at ¶ 18. Nonetheless, she was able to perform some maneuvers (i.e., minimal cooking and writing) with her right arm. *Id.* at ¶ 17. Bolden's job as a clinical support specialist involved minimal lifting. *Id.* at ¶ 19. By the early part of December 2003, Bolden was able to resume activities such as housework, shopping and cooking. *Id.* at ¶ 20. As of March 2004, she was no longer restricted by her injuries. *Id.* at ¶ 21.

On August 22, 2003, Bolden obtained a family and medical leave certification from Dr. Henry. *Id.* at ¶ 22; 29 U.S.C. § 2613. She formally applied for Family and Medical Leave Act ("FMLA") leave on August 26, 2003. Doc. No. 30 at ¶ 22. Kathy Grills ("Grills"), a senior human resources consultant at Magee, sent Bolden a letter informing her of her rights under the FMLA. *Id.* at ¶ 24. In this communication, Grills informed Bolden that her job would be held for twelve weeks, which would last until November 6, 2003, and that company policy precluded a leave of absence in excess of six months in any twelve-month period. *Id.* On December 3, 2003, Grills wrote to Bolden for the purpose of informing her that her FMLA leave had been exhausted as of November 6, 2003. *Id.* at ¶ 26. At that time, Bolden was unable to provide an answer as to when she would be able to return to work. *Id.* at ¶ 27. Consequently, Magee began to seek applications for Bolden's position. *Id.* at ¶ 28. The position was filled in January 2004.[2] *Id.*

On January 23, 2004, Dr. Henry released Bolden to return to work with a ten-pound lifting limitation regarding her left arm. *Id.* at ¶ 29. Bolden spoke to Grills on the telephone about her release to return to work, and Grills referred her to the Magee job hotline and the

---

[2]It is unclear whether the position was filled before Bolden obtained a release from her physician to return to work. Doc. No. 30 at ¶ 29; Doc. No. 34-1 at ¶ 29. The parties appear to dispute this question in their statements of fact. Nevertheless, in her journal, Bolden recorded that her position was filled on January 14, 2004, which was nine days prior to the issuance of the medical release. Doc. No. 34-9 at 1. Therefore, it appears that the position had been filled by the time Bolden was cleared to return to work, and that her failure to accommodate claim must rest on the allegation that Magee did not make a reasonable attempt to transfer her to a vacant position.

University of Pittsburgh Medical Center ("UPMC") website. *Id.* at ¶ 30. Grills told Bolden to call her back for assistance in seeking an internal transfer, which would avoid the need for an external application. *Id.* After Bolden found no positions which suited her needs and qualifications, Grills told her to retain her release slip. *Id.* at ¶ 31. Bolden's employment with Magee was terminated on March 16, 2004. *Id.* at ¶ 33.

After her termination, Bolden filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Magee had failed to engage in an interactive process for the purpose of finding other work that was available for her. *Id.* at ¶ 34; 42 U.S.C. §§ 2000e-5 and 12117(a). After exhausting her administrative remedies with the EEOC, Bolden commenced this action against Magee, alleging discrimination in violation of the Americans with Disabilities Act ("ADA") [42 U.S.C. § 12112]. *Id.* at ¶ 35. The fundamental bases for Bolden's action are her allegations that Magee discriminated against her on the basis of her alleged disability and that Magee failed to accommodate her alleged disability. *Id.* at ¶ 36.

On November 13, 2006, Magee filed a Motion for Summary Judgment (*Document No. 28*), which is presently pending before the Court and is the subject of this memorandum opinion. This Court has jurisdiction in this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3).

<u>Standard of Review</u>

Rule 56© of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56©, the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

<u>Discussion</u>

In federal employment discrimination cases, the familiar *McDonnell Douglas*[3] formulation regarding the appropriate burdens of proof and allocation of production of evidence governs and guides the analysis of the evidence presented on a motion for summary judgment.

---

[3]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination; if this burden is met, the defendant must then articulate some legitimate, nondiscriminatory reason for the employee's treatment.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant articulates a legitimate, nondiscriminatory reason for the employee's treatment, then the plaintiff must demonstrate that the defendant's stated reasons were a pretext for unlawful action.  *Id.* at 804. The *prima facie* case under *McDonnell Douglas* "is not intended to be onerous."  *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995), *cert. denied*, 515 U.S. 1159 (1995).  The *prima facie* case raises an inference of discrimination because the courts presume that the challenged acts, if otherwise unexplained, are "more likely than not based on the consideration of impermissible factors."  *Id*.

Although the *McDonnell Douglas* burden-shifting framework applies to some cases under the ADA, it is inapplicable to others.  Disparate treatment claims are analyzed under the *McDonnell Douglas* framework, while failure to accommodate claims are not.  *Johnson v. McGraw-Hill Companies*, 451 F.Supp.2d 681, 700, n. 11 (W.D.Pa. 2006).  In a disparate treatment case, a plaintiff can establish a violation of the ADA without direct evidence of discrimination by relying on the *McDonnell Douglas* framework.  *Id.*  In a failure to accommodate case, a plaintiff can establish a violation of the ADA by showing that her employer should have reasonably accommodated her but failed to do so.  *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1283 (7th Cir. 1996).  In the latter type of case, "[t]here is no need for indirect proof or burden shifting."  *Id.*  Bolden's complaint appears to allege violations of the ADA under both theories.[4]  Doc. No. 1.

Since Bolden's action arises under the ADA, the ADA's definition of the term "disability" is controlling in this case.  The ADA, in pertinent part, provides as follows:

> (2) Disability.  The term "disability" means, with respect to an individual--
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> © being regarded as having such an impairment.

---

[4]In her brief, Bolden makes arguments relevant to both disparate treatment claims and failure to accommodate claims.  Doc. No. 33 at 9-19.

6

42 U.S.C. § 12102(2).  Since Bolden's claim deals with an employment-related situation, this case is governed by 42 U.S.C. § 12112(a), which provides:

> **§ 12112.  Discrimination**
> **(a) General rule.**  No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  A plaintiff establishes a *prima facie* case of discrimination under the ADA by demonstrating that: (1) she is a "qualified individual with a disability" under the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment decision as a result of discrimination.  *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)(citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).  The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

In order for a plaintiff to establish a *prima facie* failure to accommodate case under the ADA, she must demonstrate that: (1) she had a disability; (2) the employer had notice of this disability; (3) she can perform the essential functions of her position with a reasonable accommodation; and (4) the employer failed to provide a reasonable accommodation.  *Johnson*, 451 F.Supp.2d at 701; *Conneen v. MBNA America Bank, N.A.*, 182 F.Supp.2d 370, 376-377 (D.Del. 2002); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387, n. 11 (4th Cir. 2001).  The ADA does not specifically refer to an "interactive process," and "requires only that an employer make a reasonable accommodation to the known physical or mental disability of a qualified individual with a disability unless the employer can show that the accommodation would impose an undue hardship on the employer."  *Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 329 (3d Cir. 2003).  Nevertheless, 29 C.F.R. § 1630.2(o)(3) provides:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).  In order for a plaintiff to hold her employer responsible for a breakdown in the interactive process, she must show that: (1) the employer knew about her disability; (2) she requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for her employer's lack of good faith.  *Conneen*, 334 F.3d at 330-331.

Common to both types of ADA claims is the requirement that a plaintiff fall under the ADA's definition of the term "disability."  In support of its Motion for Summary Judgment, Magee argues that Bolden cannot establish that she meets the statutory definition.  Doc. No. 29 at 2-21.  Bolden disputes Magee's argument, contending that genuine issues of material fact exist as to whether she was "disabled" under the ADA.  Doc. No. 33 at 5-16.  It is to this inquiry that the Court now turns.

A.  The Presence of an Impairment

The first argument advanced by Magee is that Bolden has not demonstrated that she suffered from an impairment during the period of time in which discriminatory conduct is alleged to have occurred.  Doc. No. 29 at 5-7.  The relevant period of time began on January 23, 2004, when Bolden received medical clearance to return to work, and ended on March 16, 2004, when she was terminated.  Doc. No. 33 at 5.  Although the ADA does not define the meaning of the phrase "physical or mental impairment" as it appears in 42 U.S.C. § 12102(2)(A), the relevant EEOC regulation defines it as follows:

> (h) *Physical or mental impairment* means:
> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
> (2) Any mental or psychological disorder, such as mental retardation, organic

brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).[5]  Magee contends that Bolden no longer had an "impairment" during the period of time in question, while Bolden asserts that she had well-documented impairments in her neck, left shoulder and left arm.  Doc. No. 29 at 5-7; Doc. No. 33 at 5-6.

In *Marinelli v. City of Erie*, 216 F.3d 354, 360 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit explained that "the necessity of medical testimony turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge."  Although Magee purports to rely on *Marinelli* in support of its position that Bolden cannot establish the existence of an "impairment" during the period of time at issue, it is difficult to fathom how Magee believes that *Marinelli* helps its argument more than it hurts it.  Doc. No. 29 at 6-7.  In *Marinelli*, the Court of Appeals stated that arm and neck pain "are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury."  *Marinelli*, 216 F.3d at 361.  The EEOC's use of the term "disorder" is not synonymous with "disease," but rather refers to a broader category of "conditions" which can affect one's musculoskeletal system.  *Id.* at 360 (describing "residual pain" as being within this broad category of "disorders").

While the evidence suggests that Bolden's injuries were less severe as of January 23, 2004, than they had been during the previous five months, the record does not support Magee's contention that Bolden no longer suffered from a physical impairment at that point.  Although he cleared Bolden to return to work, Dr. Henry reported that Bolden was still taking Motrin, that some tenderness remained in her left trapezius area, and that she continued to experience pain when reaching back with her left arm.  Doc. No. 39-5.  Bolden was still limited to only

---

[5]The United States Supreme Court has assumed *arguendo* that the EEOC regulations interpreting the term "disability" in the ADA are valid, even though the ADA does not expressly give the EEOC the authority to issue such regulations.  *Toyota Motor Manufacturing, Kenucky, Inc. v. Williams*, 534 U.S. 184, 194 (2002); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479-480 (1999).  The parties in the instant case do not question the validity of the regulations, so this Court has no occasion to consider whether the EEOC exceeded its authority in promulgating them.  *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 762, n. 7 (3d Cir. 2004).

occasional overhead reaching with her left arm, and she could use that arm to lift only up to ten pounds.  Doc. No. 31-12 at 2; Doc. No. 39-6 at 1.  At that point, Bolden was awaiting her next appointment with Dr. Larson, so it is clear that she had not completed her entire course of treatment, even though her physical therapy had concluded.  Doc. No. 39-5.  In her deposition, Bolden testified that she did not reach the point at which she felt totally unrestricted by her injuries until March 2004.  Doc. No. 31-3 at 42.  Consequently, the evidence does not support Magee's contention that Bolden no longer suffered from an "impairment" when the discrimination allegedly began on January 23, 2004, and Magee's Motion for Summary Judgment cannot be granted on that basis.

B.  Actual Disability

The presence of a physical impairment, of course, does not end the inquiry.  In order to establish that she was "disabled" within the meaning of 42 U.S.C. § 12102(2)(A), Bolden must show that her physical impairment "substantially" limited one or more of her major life activities. The EEOC has promulgated regulations to provide guidance as to how this inquiry should proceed:

> (I) *Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.
> (j) *Substantially limits*–(1) The term *substantially limits* means:
> (I) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(I)-(j).  It is clear that "[a] disability exists only where an impairment substantially limits a major life activity, not where it might, could, or would be substantially limiting if mitigating measures were not taken."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999)(internal quotation marks omitted).  The plain language of the ADA requires the disability inquiry to be made "with respect to an individual[.]" 42 U.S.C. § 12102(2).  "Thus, whether a person has a disability under the ADA is an individualized inquiry."  *Sutton*, 527 U.S.

at 483.  As the Court of Appeals explained in *Emory v. Astrazeneca Pharmaceuticals LP*, 401 F.3d 174, 182 (3d Cir. 2005), "even if two different plaintiffs alleging substantial limitations suffer from the same impairment, the nuances of its effect on their daily lives will invariably manifest themselves in distinct ways."  Accordingly, the Court must determine whether Bolden has provided sufficient evidence to enable a reasonable jury to conclude that her injuries as of January 23, 2004, substantially limited one or more of her major life activities under the circumstances of this particular case.

In determining whether an ADA plaintiff's impairment substantially limits a major life activity, consideration must be given to: (I) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.  29 C.F.R. § 1630.2(j)(2); *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 762 (3d Cir. 2004).  Bolden contends that she was substantially limited in the major life activity of working.  Doc. No. 33 at 7.  The EEOC has promulgated specific regulations addressing the application of the "substantially limits" standard to the "major life activity" of working:

(3) With respect to the major life activity of *working*--
(I) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
(A) The geographical area to which the individual has reasonable access;
(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
© The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

11

29 C.F.R. § 1630.2(j)(3).  The Supreme Court has not held that the category of "major life activities" referenced in 42 U.S.C. § 12102(2)(A) is broad enough to include the activity of "working."  *Toyota Motor Manufacturing*, 534 U.S. at 200.  Instead, it has assumed *arguendo* that working is properly characterized as a major life activity, despite the conceptual difficulty in defining "major life activities" to include working.  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999)(noting that an argument that working is a major life activity seems like a circular argument, since the underlying inquiry is whether one's exclusion from work constitutes discrimination on the basis of an impairment which substantially limits a major life activity). Magee does not argue that "working" is not a major life activity.  Doc. No. 37 at 2.  Therefore, this Court assumes *arguendo* that working is a major life activity within the meaning of the ADA.  *Guzman-Rosario v. United Parcel Service, Inc.*, 397 F.3d 6, 10-11 (1st Cir. 2005)(noting that the Supreme Court has expressed doubt as to whether "working" can be properly characterized as a "major life activity," and assuming *arguendo* that it can be so characterized). Given this assumption, it must be determined whether Bolden has presented sufficient evidence to enable a reasonable jury to conclude that, at the time that the alleged discrimination occurred, she was significantly restricted in her ability to perform either a class of jobs or a broad range of jobs.  *Williams*, 380 F.3d at 763.

In support of her assertion that she was substantially limited in the "major life activity" of working, Bolden relies on the report of Mark L. Heckman ("Heckman"), a vocational rehabilitation consultant.  Doc. No. 33 at 9.  Heckman's report is of limited value, however, because it does not distinguish between the period of time preceding January 23, 2004, and the period of time thereafter.  Heckman opined that Bolden was substantially limited in the major life activity of working between the months of August 2003 and March 2004.  Doc. No. 34-13 at 3. Nonetheless, the dispositive question is whether she was so limited between January 23, 2004, and March 16, 2004.  Bolden does not appear to argue that she was discriminated against prior to this period of time.  Indeed, the evidence suggests that her job would have been available to her had she been able to work prior to January 14, 2004.  According to Bolden's journal, her position was filled on that day.  Doc. No. 34-9 at 1.  Julie Heckler ("Heckler") testified that after the exhaustion of Bolden's FMLA leave, Bolden had been unable to specify when she would be able

to return to work.[6]  Doc. No. 31-11 at 3.  Heckler further stated that Magee could not wait any longer to fill the position, particularly in light of Bolden's inability to explain when she would be available to work again.  *Id.*  According to the position statement filed by Magee after Bolden filed her EEOC charge, this conversation between Bolden and Heckler occurred in early December 2003.  Doc. No. 23-5 at 2.  Bolden's FMLA leave was exhausted on November 6, 2003.  In the position statement, Magee explained that Heckler did not immediately fill Bolden's position after the expiration of Bolden's FMLA leave because Bolden had informed Heckler, in late October, that medical clearance for her return would follow shortly thereafter.[7]  Doc. No. 23-5 at 2.  Apparently, Heckler decided in early December that she needed to fill the position, and that Magee could not hold it open for an indefinite period of time while Bolden continued to wait for medical clearance to return.  At that time, Magee had a policy of holding an absent employee's job only for the twelve weeks required under 29 U.S.C. § 2612, even though an employee was generally permitted to take up to six months of leave in a given twelve-month period.[8]  Doc. No. 23-5 at 2.  Bolden does not argue that she was discriminated against prior to January 23, 2004.  Doc. No. 33 at 12.  For this reason, Heckman's assessment as to Bolden's inability to perform certain jobs prior to that date is irrelevant to the inquiry regarding Bolden's limitations after that date.[9]

---

[6]Because the excerpts of Heckler's deposition submitted by the parties are very minimal, the Court is unable to determine what position Heckler held at Magee during the period of time in question.  Doc. No. 31-11 at 3-4.  In the position statement filed by Magee in response to Bolden's EEOC charge, Magee referred to Heckler as Bolden's supervisor.  Doc. No. 23-5 at 2.

[7]Bolden's expectation of medical clearance in late October undermines her contention that the duration of her impairment was indeterminate.  Doc. No. 33 at 9-12.

[8]Grills testified that Magee's leave policy changed during the spring of 2004.  Doc. No. 31-5 at 4.  Under the new policy, Magee holds an employee's job for the entire six months if, after the expiration of the twelve-week period of leave guaranteed by 29 U.S.C. § 2612, a fourteen-week period of personal leave is approved.  *Id.* at 4-5.  This change had not been implemented when Bolden's FMLA leave expired on November 6, 2003.

[9]Heckman opined that Bolden was significantly restricted in her ability to perform most clerical jobs and a broad range of other jobs.  Doc. No. 34-13 at 5.  Nevertheless, it is clear that the period of limitation to which he referred dated back to August 2003.  *Id.* at 3.  This is evinced

In an attempt to argue that a reasonable jury could find that she was actually disabled as of January 23, 2004, Bolden invites this Court to ignore her own deposition testimony.  She was deposed on June 27, 2006.  Doc. No. 31-3 at 2.  Bolden testified that she was no longer restricted by her injuries.  *Id.* at 42.  She indicated that she had reached that point in March 2004.  *Id.*  In support of her argument that she was actually disabled on January 23, 2004, Bolden argues that her testimony constituted an "optimistic self-assessment" rather than an accurate statement of reality.  Doc. No. 33 at 8.  The Court acknowledges that "when an impairment results in significant limitations, that impairment is substantially limiting even if the limitations are not insurmountable."  *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 22 (1st Cir. 2002).  The focus of the inquiry is not on whether an individual has the courage to participate in the relevant major life activity despite her impairment, but rather on "whether she faces significant obstacles when she does so."  *Id.*  "What a plaintiff confronts, not overcomes, is the measure of substantial limitation under the ADA."  *Emory*, 401 F.3d at 181.

Within the context of the present case, however, Bolden's argument is unavailing.  Her deposition testimony was sufficiently fact-specific to preclude a reasonable jury from viewing it as an "optimistic self-assessment."  For instance, she testified that she stopped taking her pain medication in January 2004.  Doc. No. 31-3 at 43.  Moreover, the nature of the "major life activity" of working complicates Bolden's argument even further.  It is undisputed that Dr. Henry released Bolden to return to work on January 23, 2004, thereby certifying that he believed her to be capable of performing work that required only occasional overhead reaching and the lifting of no more than ten pounds with the left arm.  Doc. No. 39-6 at 1.  Bolden's argument appears to be the quintessential example of the circular argument referred to by the Supreme Court in *Sutton*.  Bolden argues that Magee discriminated against her after she was cleared to return to *work* because she was substantially limited in the major life activity of *working*.  *Sutton*, 527 U.S. at

---

by his observation that, at some point between January and March 2004, Bolden would have been able to perform clerical work.  *Id.* at 5.  Heckman's assessment regarding the degree of limitation caused by Bolden's impairments did not refer to the period postdating January 23, 2004.  For this reason, Bolden's reliance on Heckman's report for the purpose of establishing that she was actually disabled during the period of alleged discrimination is misplaced.  Doc. No. 33 at 9.

492.  It is, of course, true that Bolden's release to work does not end the inquiry.  It could still be argued that her ability to return to work spoke to what she was able to *overcome* rather than to what she had to *confront*.  *Emory*, 401 F.3d at 181.  In any event, however, Dr. Henry's determination that Bolden could not lift more than ten pounds with her left arm is woefully insufficient to establish that she was substantially limited in the major life activity of working.  Doc. No. 39-5.  Even if Bolden were arguing that she was substantially limited in the major life activity of lifting, the ten-pound restriction imposed by Dr. Henry would not be sufficient to enable Bolden to satisfy the statutory threshold.  *Marinelli*, 216 F.3d at 364 ("As Marinelli's ten-pound limitation is not far removed from the twenty-five pound restrictions our sister circuits have held not to render one disabled under the ADA, we would also hold that Marinelli's lifting restriction does not render him sufficiently different from the general population such that he is substantially limited in his ability to lift.").  The ten-pound lifting limitation is even less of a factor when the relevant major life activity is that of working, since such a limitation is bound to have a greater impact on the underlying, discrete job function that it directly affects than it does on a broader category of activity that includes additional, unrelated functions as well.

    For these reasons, no reasonable jury could conclude that Bolden was "disabled" under 42 U.S.C. § 12102(2)(A) as of January 23, 2004.  The evidence of record, including Bolden's own deposition testimony, clearly establishes that she was not actually disabled between January 23, 2004, and March 16, 2004.  A reasonable jury could not conclude otherwise.  Bolden has produced no evidence, direct or indirect, that Magee discriminated against her because of her impairment.  The evidence suggests that Bolden's unavailability, rather than her impairment, was the reason for the filling of her position with another applicant.  In any event, even if Magee did discriminate against Bolden because of her impairment, an employer is "free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job."  *Sutton*, 527 U.S. at 490-491 (emphasis in original).

C.  "Regarded As" Disabled

    Bolden contends that she was "disabled" under 42 U.S.C. § 12102(2)© because Magee "regarded" her impairment to be one which "substantially limited" her in one or more of her major life activities, even if her actual impairment was not of sufficient severity or duration to

satisfy the standard applicable under § 12102(2)(A).  Doc. No. 33 at 12-16.  The EEOC regulations describing this inquiry provide:

> (l) *Is regarded as having such an impairment* means:
> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has none of the impairments defined in paragraph (h) (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).  "An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity."  *Sutton*, 527 U.S. at 490.  As the United States Court of Appeals for the Third Circuit explained in *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999), "if an impairment at a certain level of severity would constitute a disability, then it follows that an employer who perceives an employee as having such an impairment perceives the employee as disabled."  Moreover, as the Supreme Court explained in *Murphy v. United Parcel Service*, 527 U.S. 516, 521-522 (1999), "a person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities."  Bolden does not argue that Magee perceived her to be suffering from an impairment other than the one that she actually had.  Doc. No. 33 at 12-16.  Therefore, the Court will review the record to determine whether a reasonable jury could conclude that Magee mistakenly believed that Bolden's "actual, nonlimiting impairment" substantially limited one or more of her major life activities.  *Murphy*, 527 U.S. at 522.

Bolden devotes a considerable portion of her brief to the expected duration of her impairment at the time of the alleged discrimination.  Doc. No. 33 at 9-12.  Although she appears to rely on such uncertainty for the purpose of establishing that she was actually disabled under § 12102(2)(A), it is also relevant for the purpose of determining whether she was "regarded as" disabled under § 12102(2)©.  Bolden contends that her injuries were not completely resolved as of March 6, 2004, when she saw Dr. Henry.  *Id.* at 11.  On that date, Dr. Henry described

"gradual improvement" with respect to Bolden's rotator cuff tear and cervical radiculopathy.
Doc. No. 34-11.  Nevertheless, he also indicated that she needed no further visits regarding these
injuries, and that there was "no gross weakness" in her left arm.  *Id.*  While this visit occurred
several weeks after Magee's discriminatory conduct allegedly began on January 23, 2004, Bolden
testified that she had stopped taking her pain medication as of January 2004.  Doc. No. 31-3 at
43.  Bolden's supervisor, Michelle Ann King ("King"), testified that Bolden had provided
periodic updates about when she would be coming back to work.  Doc. No. 34-15 at 3.

   In an attempt to establish that Magee regarded her as disabled, Bolden calls the Court's
attention to King's awareness of her injuries.  Doc. No. 33 at 13-14.  Such awareness, however,
does not mean that King regarded Bolden as disabled.  It is axiomatic that "the mere fact that an
employer is aware of an employee's impairment is insufficient to demonstrate either that the
employer regarded the employee as disabled or that that perception caused the adverse
employment action."  *Kelly v. Drexel University*, 94 F.3d 102, 109 (3d Cir. 1996).  For the same
reason, Bolden cannot preclude summary judgment in favor of Magee merely by demonstrating
that Grills was aware of her injuries.  Doc. No. 33 at 14.  It is noteworthy that while Bolden relies
on the ten-pound lifting restriction imposed by Dr. Henry in an attempt to establish that she was
actually disabled under § 12102(2)(A) as of January 23, 2004, Grills testified that she had been
unaware of this limitation during the period of time in question.  Doc. No. 31-5 at 8.  Although
Bolden impliedly contradicted Grills' testimony when she testified that she had read the release
to Grills over the telephone, an awareness of the lifting limitation on the part of Magee, without
more, cannot establish that Magee regarded Bolden as disabled under § 12102(2)©.  *Tice v.
Centre Area Transportation Authority*, 247 F.3d 506, 515 (3d Cir. 2001)("Doubts alone do not
demonstrate that the employee was held in any particular regard").  To the extent that Bolden
relies on King's observation of her unsuccessful attempts to perform her duties in the immediate
aftermath of the bus accident as evidence that Magee regarded her as disabled, such observation
occurred five months prior to the period of time at issue in this case.  Doc. No. 33 at 13-14.  The
evidence suggests that Magee would have returned Bolden to her prior position had she been
medically cleared to work shortly after the exhaustion of her FMLA leave.  *Wilson v. MVM, Inc.*,
475 F.3d 166, 179 (3d Cir. 2007)("The undisputed evidence shows that MVM did not consider

the appellants in any way disabled and would have reinstated them immediately if the USMS would have determined the appellants were medically qualified."). Consequently, the Court agrees with Magee's argument that Bolden has presented no evidence to establish that Magee regarded her as disabled, and that no genuine issue of material fact exists as to this issue. Doc. No. 37 at 7.

Bolden does not argue that she had a record of a disabling impairment. 42 U.S.C. § 12102(2)(B). The Court has determined that, given the evidence of record, no reasonable jury could conclude that she was actually disabled or regarded as disabled between January 23, 2004, and March 16, 2004. 42 U.S.C. § 12102(2)(A), ©. Since Bolden was not a "qualified individual with a disability" under 42 U.S.C. § 12112(a), Magee is entitled to summary judgment.[10]

D.  Interactive Process

Bolden's inability to establish that she was disabled under the ADA is dispositive of this case without regard to whether Magee properly engaged in an interactive process to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). There was no disability, real or imagined, for Magee to "accommodate." Nonetheless, even if the Court were to assume *arguendo* that Bolden was regarded as disabled during the relevant period of time, Magee would still be entitled to summary judgment on the present record.

At the outset, it is worth noting that this Court is bound by the decision of the United States Court of Appeals for the Third Circuit in *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 775 (3d Cir. 2004), which held that employees who are "regarded as" disabled are "entitled to reasonable accommodation in the same way as are those who are actually disabled." The Court acknowledges Magee's argument to the contrary, which

---

[10]42 U.S.C. § 12111(8) defines the term "qualified individual with as disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Since Bolden did not have a "disability" within the meaning of 42 U.S.C. § 12102(2), she was not a "qualified individual with a disability." Hence, she was not entitled to the substantive protections provided by 42 U.S.C. § 12112(a).

appears to be made solely for the purpose of preserving the issue for reexamination by the Court of Appeals or certiorari review by the Supreme Court.  Doc. No. 29 at 19 ("Magee submits that this issue is one that should be further examined by the courts of this Circuit and, ultimately, the Supreme Court of the United States.").  The issue has divided the Courts of Appeals.[11]  This Court, however, has no authority to overrule *Williams*.[12]  Accordingly, if Bolden had been regarded as disabled by Magee, she would have been entitled to reasonable accommodations under the ADA.

As noted earlier, Bolden was terminated pursuant to Magee's leave policy, which permitted an employee to take up to six months of leave in a given twelve-month period but only held the employee's job for the twelve weeks required under 29 U.S.C. § 2612.  Doc. No. 23-5 at 2.  Bolden argues, however, that Magee personnel made no attempt to transfer her to an open position.  Doc. No. 33 at 17-19.  She contends that a genuine issue of material fact exists as to whether Magee fulfilled its duty to engage in an interactive process.  *Id.*  In order to hold Magee responsible for a breakdown in the interactive process, however, Bolden would need to establish that she could have been reasonably accommodated.  *Conneen*, 334 F.3d at 330-331; *Johnson*, 451 F.Supp.2d at 701.

_____

[11]Under the governing precedents in four circuits, employees who are merely "regarded as" disabled under 42 U.S.C. § 12102(2)© are not entitled to reasonable accommodations. *Kaplan v. N. Las Vegas*, 323 F.3d 1226, 1233 (9th Cir. 2003); *Weber v. Strippit, Inc.*, 186 F.3d 907, 916-917 (8th Cir. 1999); *Workman v. Frito Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998).  In four other circuits, the governing precedents hold that employees who are "regarded as" disabled under the ADA are entitled to reasonable accommodations.  *D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1235-1236 (11th Cir. 2005); *Kelly v. Metallics West, Inc.*, 410 F.3d 670, 674-676 (10th Cir. 2005); *Williams v. Philadelphia Housing Authority Police Department*, 380 F.3d 751, 775 (3d Cir. 2004); *Katz v. City Metal Co.*, 87 F.3d 26, 32-34 (1st Cir. 1996).  The Seventh Circuit declined to reach the issue in *Cigan v. Chippewa Falls School District*, 388 F.3d 331, 335 (7th Cir. 2004).  In *Gelfo v. Lockheed Martin Corporation*, 140 Cal. App. 4th 34, 55-62 (Cal. Ct. App. 2006), the Court of Appeals of California adopted the Third Circuit's analysis in *Williams* for cases arising under California's Fair Employment and Housing Act.

[12]The Court notes that a writ of certiorari was sought, and denied, in *Williams*. *Philadelphia Housing Authority v. Williams*, 544 U.S. 961 (2005).  Whether, and under what circumstances, the holding in *Williams* should be reconsidered is not for this Court to decide.

Assuming *arguendo* that Bolden was entitled to reasonable accommodations under the ADA, "[a]n employer's obligation to provide a reasonable accommodation does not require the employer to create a new job." *Donahue v. Consolidated Rail Corporation*, 224 F.3d 226, 230 (3d Cir. 2000). In order to establish that she could have been transferred to another position, Bolden must show that: (1) there was a vacant, funded position; (2) the position was at or below the level of her former job; and (3) she was qualified to perform the essential duties of this job with reasonable accommodations. *Id.* The Court acknowledges that it is not always necessary for a plaintiff in a failure-to-transfer case to show that she formally applied for a vacant position.[13] *Shapiro v. Township of Lakewood*, 292 F.3d 356, 360 (3d Cir. 2002). Nevertheless, Bolden must still establish the existence of a vacant position to which she could have been transferred.

In her brief, Bolden states that she "may have been qualified" for some of the jobs identified in her journal entries. Doc. No. 33 at 18-19; Doc. No. 34-9 at 1-17. The mere identification of jobs referenced in a private journal, however, establishes nothing with respect to Bolden's qualifications to perform those jobs. Since Bolden has failed to show that jobs to which she could have been transferred existed between January 23, 2004, and March 16, 2004, she has not demonstrated the existence of a genuine issue of material fact as to whether she could

---

[13]Magee argues that Grills attempted to work with Bolden for the purpose of finding a position to which she could have been transferred. Doc. No. 29 at 20. Bolden appears to dispute this assertion, claiming that nobody at Magee ever "offered her a job" even though she "may have been qualified" for some of the positions that she had called to Grills' attention. Doc. No. 33 at 18-19. It is insufficient, however, for Bolden to argue that she "may have been qualified" for a vacant position. In order to hold Magee responsible for a breakdown in the interactive process, she must demonstrate that she could have been reasonably accommodated (i.e., that there was a specific vacant position to which she could have been transferred). It is not enough for Bolden to recite categories of jobs that she was capable of performing. *Barclay v. Amtrak*, 435 F.Supp.2d 438, 447-448 (E.D.Pa. 2006)(granting summary judgment to an employer because the plaintiff failed to identify a specific vacant position to which he could have been transferred). Given that Bolden has not provided evidence that a vacant position for which she was qualified existed, the Court has no occasion to consider whether Magee's actions constituted good faith participation in the interactive process. Moreover, since Bolden was not a "qualified individual with a disability" under 42 U.S.C. § 12112(a), she was not entitled to reasonable accommodations in any event.

have been reasonably accommodated.  *Barclay v. Amtrak*, 435 F.Supp.2d 438, 447 (E.D.Pa. 2006)("While Barclay would like an opportunity to show at trial that there were available positions to which he could have been transferred, Amtrak is entitled to know now, at the summary judgment phase, what evidence Barclay has of vacant, funded positions, at or below the level of his former job, whose essential functions he was capable of performing."). Consequently, even if Bolden had been able to establish that she was a "qualified individual with a disability" under 42 U.S.C. § 12112(a), Magee would nevertheless be entitled to summary judgment on the ground that Bolden has not provided sufficient evidence that she could have been reasonably accommodated to enable a reasonable jury to find in her favor.

Conclusion

Although Bolden has established that she suffered from a physical impairment between January 23, 2004, and March 16, 2004, no reasonable jury could conclude, based on the evidence of record, that she was statutorily disabled under § 12102(2)(A) or "regarded as" disabled under § 12102(2)(C).  Hence, she was not a "qualified individual with a disability" under § 12112(a). Alternatively, even if Bolden had been a "qualified individual with a disability" during the period of time in question, no reasonable jury could conclude, based on the evidence of record, that she could have been reasonably accommodated.  For these reasons, the Court will grant Magee's Motion for Summary Judgment (*Document No. 28*).  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLE C. BOLDEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:05-cv-1063** |
| | ) | |
| **MAGEE WOMEN'S HOSPITAL** | ) | |
| **OF THE UNIVERSITY OF** | ) | |
| **PITTSBURGH MEDICAL CENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER OF COURT

AND NOW, this 24th day of April, 2007, in accordance with the foregoing Memorandum

Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant's Motion for

Summary Judgment (*Document No. 28*) is **GRANTED**.

The Clerk is directed to docket this case closed.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:    Gregory G. Paul, Esquire
       Email: gpaul@peircelaw.com

       Pamela G. Cochenour, Esquire
       Email: pgc@pbandg.com